**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**SOUTH DELTA PLANNING &
DEVELOPMENT DISTRICT**                                    **PLAINTIFF**

**V.**                                    **CAUSE NUMBER: 4:25-CV-197-JDM-RP**

**UNITED STATES OF AMERICA**                                    **DEFENDANT**

**MEMORANDUM OPINION AND
ORDER ON MOTION TO DISMISS**

Before the Court is the United States of America's motion to dismiss South Delta Planning & Development District's tax-refund complaint.  [12]

In the complaint, South Delta seeks payroll tax refunds for two quarters in 2020 and three quarters in 2021.  Specifically, South Delta claims it was entitled to the Employment Retention Credit, or ERC, that Congress made available as part of its COVID-19 relief legislation.  While the Employment Retention Credit and its eligibility requirements are unique to the COVID-19 era and the 2020-2021 tax years, South Delta's is not the only ERC refund action pending in Mississippi federal courts.  In fact, just recently, a court in this District considered—and rejected—the same lack-of-jurisdiction and insufficient-pleadings arguments the United States makes here. *Region IV Mental Health Servs. v. U.S.*, No. 3:26-CV-12-RPC-JMV, 2026 WL 1897120 (July 1, 2026).  The Court agrees with that decision and applies the same logic here.

Contrary to the United States' assertions, South Delta did not "fail" to file an additional administrative refund claim for the two quarters in 2020 before filing suit.  South Delta filed for an ERC-based refund for these two quarters and *received* the claimed refund.  Only *after* the IRS issued the refund did it disallow the ERC for those quarters and re-assess the amount of the ERC refund, plus interest and late penalties.  After being re-assessed for the ERC refund, South Delta

1

did not, as the United States contends, have to file a *new* administrative refund claim as a jurisdictional prerequisite for filing suit.

Similarly, South Delta also sufficiently plead ERC claims for the three quarters the IRS rejected its refund claim.[1]  As in *Region IV*, the complaint, though lengthy, is not a "shotgun" pleading.  And it sufficiently pleads a plausible claim that one or more of the various local, state, and federal COVID-19 shutdown orders caused a partial suspension of South Delta's business operations, making South Delta ERC eligible.

But the Court agrees with the United States that South Delta cannot seek declaratory or injunctive relief in a tax case.  So South Delta's alternative declaratory-relief claim must be dismissed.

As more fully explained below, the United States' motion to dismiss is granted in part and denied in part.

### Background Facts & Procedural History

In the wake of the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (CARES Act).  Pub. L. 116-136.  134 Stat. 281 (2020).  The CARES Act included the Employment Retention Credit (ERC)—"a refundable tax credit for employment taxes equal to fifty percent of the qualified wages of employees for each applicable tax quarter." *Region IV*, 2026 WL 1897120, at *1 (citing § 2301(a) of the CARES Act).  Congress's goal for the Employment Retention Credit (ERC) was to encourage businesses to keep their workers on the payroll during the pandemic despite government orders that limited or temporarily shuttered their

---

[1] The Court agrees with the United States that South Delta actually received ERC refunds for the first and second quarters of 2021.  So there is no issue for the Court to resolve.  South Delta's ERC refund claims for those two quarters will be dismissed, leaving its claims for the second and third quarter of 2020 and the third quarter of 2021.

businesses. *ERC Today LLC v. McInelly*, 782 F. Supp. 3d 721, 726 (D. Ariz. 2025).  To that end, Congress limited ERC refunds to "eligible employers"—specifically, "employers whose trade or business operations were 'fully or partially suspended during the calendar quarter due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease 2019 (COVID-19)." *Stenson Tamaddon LLC v. U.S. Internal Revenue Serv.*, No. CV-24-01123-PHX-SPL, 2025 WL 1725942, at *7 (D. Ariz. June 20, 2025) (quoting 26 U.S.C. § 3134(c)(2)(A)(ii)(I)).

In early 2023, South Delta amended its payroll tax returns for five quarters—two in 2020 and three in 2021—to claim an ERC refund.  Months later, the United States issued refund checks for four of the five claimed quarters—the two in 2020 and the first two quarters in 2021.  No refund was issued for the third quarter of 2021.

But at the end of 2023, the Internal Revenue Service made an about-face and disallowed the refunds.  The IRS then assessed South Delta the amount of the refund previously issued for the two quarters in 2020, plus interest and late penalties.  The IRS also announced an assessment would be forthcoming for the two quarters of refunds in 2021.  But no additional assessment was ever issued for the first and second quarter of 2021.  The IRS remained silent about the third quarter of 2021.

South Delta paid the new 2020 payroll tax assessments for one employee in both quarters.[2] It then initiated this lawsuit.  South Delta seeks tax refunds representing the ERC for each of the

---

[2] To challenge a tax assessment in federal court, normally, the taxpayer must pay the full amount and then sue for a refund.  *Bruecher Found. Servs., Inc. v. United States*, 383 F. App'x 381, 384 n.2 (5th Cir. 2010).  But the "divisible tax rule allows a taxpayer"—when the tax is divisible by nature—"to 'pay a divisible portion of the tax . . . and then test the validity of the entire assessment in a suit for refund brought . . . in the District Court.' "  *Id.* (quoting *Lucia v. United States*, 474 F.2d 565, 576 (5th Cir.1973)).  Payroll taxes are divisible by nature and thus fall under the divisible

five quarters it claimed in its 2023 amended tax returns.  It also seeks a declaratory judgment that it is entitled to keep the money the IRS previously paid.

The United States responded to South Delta's lawsuit with a motion to dismiss.  [12]  The government invokes both Federal Rule of Civil Procedure 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction, and Federal Rule of Civil Procedure 12(b)(6), which governs motions to dismiss for failure to state a claim for which relief may be granted.  Specifically, the United States first asserts this Court lacks subject matter jurisdiction over the two quarters in 2020.  It claims jurisdiction is lacking because, after the IRS's post-refund assessment, South Delta did not first file for an administrative refund claim, which is a jurisdictional requirement.  Second, it argues there is no case or controversy—and thus no jurisdiction—over the refund claim for the first two quarters of 2021 because it issued refunds and never re-assessed South Delta for those quarters.  Finally, it attacks South Delta's complaint, which encompasses all five quarters, as a shotgun pleading that fails to state a claim.

### Subject Matter Jurisdiction

The Court first addresses the United States' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

The Court finds two of the United States' three jurisdictional challenges have merit.

---

tax rule.  *Id.*  So South Delta's payment of taxes assessed for one employee satisfied the payment prerequisite to filing a refund suit challenging the entire assessment.

First, the Court agrees it lacks jurisdiction to issue declaratory or injunctive relief in a tax-refund dispute. The Declaratory Judgment Act—the statute that gives district courts jurisdiction to provide declaratory relief—carves out a clear exception "with respect to Federal taxes." 28 U.S.C. § 2201(a). And the Anti-Injunction Act prohibits any "suit for the purpose of restraining the assessment or collection of any tax." 28 U.S.C. § 7241(a). So to the extent South Delta's complaint seeks declaratory and/or injunctive relief, those claims are dismissed. *See Harvey v. Internal Revenue Serv.*, 670 F. App'x 198, 200 (5th Cir. 2016).

Second, the Court also agrees there is no Article III "case or controversy" concerning the first two quarters of 2021. South Delta has received the ERC refund claimed for these two quarters. And the government has not attempted to claw that money back. Again, this Court has no jurisdiction to declare that South Delta is entitled to keep those refunds or enjoin the United States from reassessing taxes for those quarters. So there is nothing for this Court to resolve. South Delta's refund claims for the first and second quarters of 2021 are dismissed.

But the Court rejects the United States' contention that it lacks jurisdiction over the refund claims for the second and third quarters of 2020. These are the quarters for which the government issued a refund, then later disallowed and re-assessed it. The claimed lack of jurisdiction stems from South Delta not filing a *new* administrative claim for a refund of the already refunded money. This is not the first time the United States has pushed this argument in this District. Recently, in another ERC refund dispute, another judge in this District considered—and rejected—this same argument in a factually analogous case. *Region IV*, 2026 WL 1897120, at **2-4.

"Taxpayer suits for refunds are governed, in part, by the principles of sovereign immunity." *Mallette Bros. Const. Co. v. United States*, 695 F.2d 145, 155 (5th Cir. 1983). This means that a taxpayer may only sue the United States "where Congress has expressly provided its statutory

consent." *Id.* Congress has granted such consent in 26 U.S.C. § 7422—but only if the jurisdictional prerequisites are met. Specifically, "the tax at issue must be paid, the taxpayer must have properly filed an administrative claim for the refund with the IRS, and the administrative claim must either be disallowed or not acted upon within six months after it was filed." *Region IV*, at \*2 (citing *Roberts v. U.S.*, 242 F.3d 1065, 1067 (Fed. Cir. 2001)). Here, just as it did in *Region IV*, the United States challenges the second prerequisite. *Cf. id.* It argues South Delta did not file a refund claim for the post-refund assessment of payroll taxes for the second and third quarters of 2020. So in its view, this Court lacks jurisdiction to consider South Delta's refund claims for those quarters.

According to the United States, the issuance of a refund makes the taxpayer and the government all square. So any post-refund demand for taxes is really a new assessment. And that purported new assessment requires a new administrative claim for a refund. But that's not what the Court sees here. Rather, the record shows what the government calls a "new" assessment is not new at all. Just as in *Region IV*, "[South Delta] and the United States are arguing over the same amount of money that [South Delta] claimed in the original refund claim filed in [2023]" and that the United States paid South Delta months later. *Id.* at \*4. So just as in *Region IV*, the Court finds South Delta has met the jurisdictional prerequisite to file this suit. *Id.* This Court agrees that requiring South Delta to file a new administrative claim for the quarters South Delta already filed an administrative claim "simply because a new assessment was issued for the very money at issue" would "be ineffective, a waste of time and, most importantly, not required by law." *Id.*

So to the extent the United States' Rule 12(b)(1) motion is aimed at South Delta's refund claims for the second and third quarters of 2020, the motion is denied.

6

**Sufficiency of the Pleadings**

Turning to the United States' Rule 12(b)(6) motion for failure to state a claim, just as in *Region IV*, the Court similarly disagrees that South Delta's complaint is a "shotgun" pleading. *See Region IV*, 2026 WL 1897120, at *4. To be sure, South Delta's complaint references a collection of government COVID-19 shutdown orders. But at the pleadings stage, the Court cannot say that these orders amount to "irrelevant and unrelated facts not tied to specific causes of action such that the claims made are indeterminate," making the complaint an objectionable shotgun pleading. *Id.* (quoting *Sahlein v. Red Oak Capital, Inc.*, No. 3:13-CV-00067-DMB-JMV, 2014 WL 3046477, at *3 (N.D. Miss. July 3, 2014)). These orders support South Delta's pitch that it was eligible for the ERC refund for the three quarters at issue because these orders led to its business operations being partially suspended.

As to the United States' claim that, to sufficiently plead an ERC refund claim, the complaint must pinpoint a *specific* order that proximately caused the alleged partial shutdown, that claim was recently rejected by the Southern District of Mississippi. *Plastic Film, LLC v. United States*, No. 5:25-CV-30-DCB-LGI, 2026 WL 144343, at *3 (S.D. Miss. Jan. 20, 2026). In *Plastic Film*, the court emphasized that, to meet the *Twombly* / *Iqbal* pleadings standard, the complaint does not have to identify a particular order. *Id.* (applying the plausible-claim standard from *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Instead, in these cases, it is enough for the taxpayer to claim entitlement to an ERC refund by "alleg[ing] that its business operations were suspended in response to governmental orders issued during the COVID-19 pandemic." *Id.*

*Region IV* echoed *Plastic Film*'s conclusion—that the taxpayer is not required to plead specific government orders led to the partial suspension for specific tax quarters. *Region IV*, at *5

7

(citing *Plastic Film*, 2026 WL 144343, at \*3). And the Court applies the same standard here. South Delta's complaint contains sufficient factual matter, accepted as true, to state a claim for ERC refunds for the three contested quarters. The complaint alleges South Delta is an eligible employer whose business was partially suspended due to government COVID-19 shut-down orders. And "[w]hether the referenced orders ultimately substantiate [South Delta's] eligibility for the credit presents a fact-intensive issue appropriately addressed through discovery or at summary judgment"—and not a Rule 12(b)(6) motion to dismiss. *Plastic Film*, 2026 WL 144343, at \*3.

### Conclusion

The United States Rule 12(b)(1) [12] motion is **GRANTED in part** and **DENIED in part**.

The United States Rule 12(b)(6) [12] motion is **DENIED**.

The Court **LIFTS** the stay [14] triggered by the United States' jurisdictional challenge.

SO ORDERED, this the 15th day of July, 2026.

/s/ James D. Maxwell, II
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI

8